NOT DESIGNATED FOR PUBLICATION

No. 119,985

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS GEORGE CARLTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; JEFFREY GETTLER, judge. Opinion filed June 26, 2020. Reversed in part, vacated in part, and remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Jodi Liftin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GARDNER, J., and WALKER, S.J.

PER CURIAM: Thomas George Carlton pleaded no contest to indecent liberties with a child, an off-grid felony. Yet the district court granted Carlton a departure to an on-grid sentence of 85 months in prison. Carlton appeals his sentence arguing we must correct his criminal history score, jail credits earned, and opportunity to earn good time credit. Carlton also argues that the district court erred in subjecting him to lifetime electronic monitoring. We agree with some of Carlton's claims of error.

1

*Factual and Procedural Background*

Carlton pleaded no contest to one count of aggravated indecent liberties with a child. In exchange for that plea, the State agreed to recommend a downward-durational departure of 85 months in prison. The district court, agreeing that mitigating circumstances warranted a departure from the sentencing guidelines' requirement of a life sentence, sentenced Carlton to 85 months in prison.

The amended presentence investigation (PSI) report showed Carlton's criminal history score as A. That score was based on Carlton's six prior person felony convictions. Those convictions consisted of four traditional person felonies and two person felonies that were converted from six person misdemeanors. See K.S.A. 2019 Supp. 21-6811. One of Carlton's person felonies, for aggravated battery, was from Kansas. But Carlton committed his other person offenses in Oklahoma and California.

At sentencing, the district court held that Carlton was not eligible to earn good time credit. And it tentatively awarded Carlton 1,193 days of credit for time served. But the journal entry of judgment awarded Carlton only 235 days of jail time credit and gave no reason for this discrepancy.

Carlton untimely appealed from his sentence and a panel of this court later remanded Carlton's case to the district court for hearing under *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982). The district court found an *Ortiz* exception applied so it granted Carlton's request to file an out-of-time appeal. Accordingly, we allowed Carlton's appeal to proceed.

*Did the District Court Err in Calculating Carlton's Criminal History Score?*

Carlton acknowledges that his sentence is illegal because under K.S.A. 2019 Supp. 21-6818(a), K.S.A. 2019 Supp. 21-6804(a), and K.S.A. 2019 Supp. 21-5506(c)(2)(C), he was entitled to a sentence not less than 50% of 233 months. But he received a sentence less than that—85 months. Carlton argues that his sentence would be legal if the panel "corrects" his criminal history score from A to C. He contends that *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), requires us to score all his out-of-state convictions as nonperson offenses.

*Wetrich*, filed March 9, 2018, applies to Carlton's sentence, pronounced on May 8, 2018. See 307 Kan. 552. *Wetrich* held that when classifying out-of-state convictions as person or nonperson offenses, we refer to comparable offenses under the Kansas criminal code in effect on the date of the current crime of conviction. 307 Kan. 552, Syl. ¶ 2. See K.S.A. 2019 Supp. 21-6811(e)(3). It also held:

> "For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562.

See *Wetrich*, 307 Kan. at 558-59 (finding that the issue of comparable offenses is decided as a matter of statutory, not constitutional, interpretation).

Although Carlton provides us with an individualized analysis for each out-of-state conviction he alleges was miscategorized as a person offense, the State does not. Rather than address any of Carlton's individual claims, the State asks the panel to remand for resentencing to give the district court the opportunity to make the appropriate *Wetrich* findings, citing *State v. Obregon*, 309 Kan. 1267, 444 P.3d 331 (2019). Carlton counters

3

that *Obregon* permits remand without appellate consideration only when some out-of-state provisions are comparable and others are not *and* when we can not tell which provision his past criminal convictions are based on. Carlton then asserts that no matter what version of the out-of-state offenses Carlton committed, his out-of-state crimes are broader than the Kansas provisions so we must score them as nonperson offenses.

Because Carlton's amended PSI has errors and lacks the specificity required for some of his convictions, we find it best to remand for resentencing and more fact-finding in compliance with *Wetrich,* without considering Carlton's prior convictions individually.

*Standard of Review and Basic Legal Principles*

K.S.A. 2019 Supp. 22-3504(a) provides that a court may correct an illegal sentence at any time the defendant is serving such sentence. Our Supreme Court has defined an illegal sentence as: (1) a sentence imposed by the court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in the character or the term of authorized punishment; or (3) a sentence ambiguous as to the time and manner in which it is to be served. *State v. Hayes*, 307 Kan. 537, 538, 411 P.3d 1225 (2018); see K.S.A. 2019 Supp. 22-3504(c). Whether a sentence is illegal under K.S.A. 22-3504 is a question of law over which this court exercises unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Likewise, classification of prior offenses for criminal history purposes involves statutory interpretation, a question of law subject to unlimited review. See *Wetrich*, 307 Kan. at 555.

Proper sentencing of a defendant includes determining the defendant's criminal history score.

"A criminal sentence is based on the severity level of a defendant's current crime and on the defendant's criminal history score. See K.S.A. 2018 Supp. 21-6805(a). The

4

severity level of an offense is set by statute. So, a district court calculates a defendant's criminal history score by listing his or her prior criminal convictions or juvenile adjudications—including those committed out-of-state—and then classifying those convictions or adjudications as either person or nonperson offenses. Then, based on the number and type of convictions, the district court arrives at a defendant's criminal history score. K.S.A. 2018 Supp. 21-6809; K.S.A. 2018 Supp. 21-6810; K.S.A. 2018 Supp. 21-6811(e)." *State v. Curry*, No. 120,979, 2020 WL 961958, at *2 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* June 12, 2020.

The revised Kansas Sentencing Guidelines Act (KSGA) (K.S.A. 2019 Supp. 21-6801 et seq.) directs the district court how to score a defendant's out-of-state convictions:

"(e)(1) Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history.

(2) An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction.

. . . .

(3) The state of Kansas shall classify the crime as person or nonperson.

(A) In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date of the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime." K.S.A. 2019 Supp. 21-6811(e).

*We Remand for Resentencing without Analyzing Each of Carlton's Prior Crimes.*

Our Supreme Court's most recent approach is that to be scored as a person crime, a prior out-of-state conviction must have elements identical to or narrower than its comparable Kansas crime. *Wetrich*, 307 Kan. at 562. In *Obregon*, our Supreme Court addressed a defendant's claim that the district court improperly scored his Florida conviction without knowing which version of the Florida crime he committed. The

5

*Obregon* court was the first case to apply *Wetrich* when the Kansas and the out-of-state offenses are both alternative means crimes. 309 Kan. at 1272-74.

In *Obregon*, our Supreme Court noted that although person-crime classification cases generally present questions of law, the analysis becomes more nuanced when considering the State's duty to establish—by a preponderance of the evidence—that a defendant committed the crime relied on in classifying the defendant's criminal history. "And when the crime in question is an out-of-state offense with alternative means—some of which would not be comparable to Kansas person crimes—the State's burden is to establish that the defendant committed a version of the offense supporting the person classification." 309 Kan. at 1275. And to see whether the State meets this burden we look for substantial competent evidence. See *State v. Hughes*, 290 Kan. 159, 162, 224 P.3d 1149 (2010). Considering all of this, the *Obregon* court found that the district court erred in classifying the defendant's Florida conviction and remanded for more findings of fact because it could not tell which version of the Florida offense the defendant committed. 309 Kan. at 1275-76.

We have the same problem here. Both parties acknowledge that some of Carlton's crimes are divisible and both ask the panel to remand for resentencing. Yet neither party tells us which of Carlton's convictions they believe are divisible and thus require remand without further consideration by this court.

And Carlton's PSI contains errors. For example, it lists one of Carlton's convictions for domestic assault and battery under "21 O.S. 6449(c)." Yet no such statute exists. The district court compared "21 O.S. 6449(c)" to K.S.A. 2015 Supp. 21-5413(b)(2)(B). But this Kansas statute requires a showing of aggravated battery—"recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2015 Supp. 21-5413(b)(2)(B). Perhaps the PSI drafter intended to list 21 Okla. St. Ann. §

644(c)—defining assault and battery against a "former intimate partner or a family or household member"—but perhaps not. The record is unclear and we cannot speculate. Remand is necessary to determine what Oklahoma crime Carlton committed.

The PSI also lists the Kansas statute prohibiting interference with a law enforcement officer as comparable to Carlton's Oklahoma convictions for violating a protective order. Yet neither party asserts this is the correct Kansas statute to compare to that Oklahoma offense.

The record shows that six out-of-state misdemeanor offenses were aggregated to two felony person offenses. See K.S.A. 2019 Supp. 21-6811(a), (e)(2)(B). Yet we cannot tell which six misdemeanors were aggregated, as Carlton has more than six out-of-state person misdemeanors. Carlton has seven prior Oklahoma convictions just for violating a protective order. Three of these may have been converted into a person felony for purposes of Carlton's criminal history score. But nine of Carlton's prior crimes were categorized as adult misdemeanor conversion offenses, so it is possible that his felonies were from other converted misdemeanors. And because the record is unclear as to which misdemeanors were converted, we cannot tell how reversal on these misdemeanors will affect Carlton's overall criminal history score, even if Carlton is correct that the comparable Kansas offense is narrower than the out-of-state misdemeanors.

Similarly, Carlton claims that Oklahoma's statute for committing a threatening act of violence is broader than Kansas' statute for assault because Oklahoma does not require that the victim feel apprehension. Yet we cannot tell whether any error in scoring Carlton's conviction for committing a threatening act of violence as a person offense has any effect on Carlton's criminal history score, because it is not listed as having been aggregated and converted into a felony conviction.

7

Our review of the record shows that perhaps entries 16 and 20 in Carlton's amended PSI (Oklahoma domestic assault and battery) were excluded from his criminal history score. Yet it is also possible that Carlton's criminal history score did factor in those misdemeanor assault and battery convictions but did not include three of Carlton's Oklahoma convictions for violating a protective order. In his original PSI, Carlton had a criminal history score of A with 23 prior convictions listed. Carlton objected to that criminal history score, arguing he had no recollection of two person felonies from 2009 and 2010. He asked the district court to postpone his sentencing until he could verify the Oklahoma convictions and review the PSI. An amended PSI then added four violations—a felony conviction for a second assault and battery under 21 Okla. Stat. Ann. § 644(c) and three additional Oklahoma misdemeanors for violating a protective order. Yet the amended PSI still listed only six misdemeanors as adult misdemeanor conversion offenses. The State noted these additions at sentencing, highlighting the addition of a felony offense. It stated that the addition of a misdemeanor offense did not matter because Carlton's felony convictions already established the highest criminal history score of A. Carlton's misdemeanor assault and battery convictions may have been considered in calculating his criminal history score and his additional violation of a protective order misdemeanors may not have been considered. We simply cannot tell. And Carlton may have misdemeanors that were not counted that could yet be counted to convert to a felony.

Here, as in *Obregon*, the record lacks evidence of which version of the out-of-state crimes Carlton committed. The PSI does not show which subsection of Oklahoma's assault and battery with a dangerous weapon statute Carlton violated. Similarly, we cannot tell which subsection of California's negligent discharge of a firearm statute Carlton violated. See 21 Okla. Stat. Ann § 645; Cal. Penal Code § 246.3.

*Obregon* demands that our appellate court consider whether the State met its burden of proving that a defendant committed his underlying out-of-state convictions in

these person-crime classification cases. "The presentence investigation summary frequently can satisfy the State's burden absent defendant's objection, but more is required when the summary does not indicate which version of the out-of-state offense the defendant committed." 309 Kan. at 1275 (citing K.S.A. 2018 Supp. 21-6814[b], [c]). The PSI is insufficient here because it fails to provide which version of the crimes Carlton committed. Thus, we remand for resentencing with directions to determine which version of the out-of-state crimes Carlton committed and then to apply *Wetrich* to them.

In doing this, it may be necessary for the district court to look beyond the statutory elements of some of Carlton's offenses:

> "In an analogous situation, the United States Supreme Court has 'recognized a "narrow range of cases" in which sentencing courts . . . may look beyond the statutory elements . . . .' *Descamps v. United States*, 570 U.S. 254, 261, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). When a 'statute is "divisible"—i.e., comprises multiple, alternative versions of the crime—a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction' arose under any particular alternative. 570 U.S. at 262. In those cases, the Court's caselaw permits 'sentencing courts . . . to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction.' 570 U.S. at 262; see also *Johnson v. United States*, 559 U.S. 133, 144, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010) ('When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes . . ., the "'modified categorical approach'" . . . permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.')." *Obregon*, 309 Kan. at 1273-74.

Carlton asserts that his criminal history is necessarily a C, yet our review of the record shows that it may well be a B. Although Carlton contends that the elements of Oklahoma's domestic assault and battery offenses are broader than the elements of the

Kansas offenses, we disagree. We find that the Kansas battery statute is comparable, as did our panel in *Curry*, 2020 WL 961958, at *2-4 (finding Oklahoma's "Domestic Abuse—Assault and Battery" provisions under 21 Okla. St. Ann. § 644[c] comparable to Kansas' battery offense as defined under K.S.A. 2018 Supp. 21-5413[a]). So if Carlton's Oklahoma assault and battery convictions were aggregated into felonies, they were properly scored as person offenses.

The problem is that the record contains insufficient facts for us to conduct the detailed review that is necessary. And it is not our job to do so. Despite Carlton's invitation to the contrary, "appellate courts do not make factual findings in the first instance; we only review district court findings." *State v. Estrada-Vital*, 302 Kan. 549, 557, 356 P.3d 1058 (2015). We remand for further proceedings on this issue without vacating Carlton's sentence.

*Did the District Court Err in Granting Carlton Jail Time Credit for Only Some of the Time He Served Pending Resolution of this Case?*

Carlton next argues that the district court erred in denying him credit for time served. He asks this court to correct the error by directing the district court to enter a nunc pro tunc order amending the court's clerical mistake. The State does not substantively respond but simply agrees that the court should consider this issue on remand.

As noted above, a court may correct an illegal sentence at any time the defendant is serving such sentence. K.S.A. 2019 Supp. 22-3504(a). And "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." K.S.A. 2019 Supp. 22-3504(b). This issue involves statutory interpretation, which we review de novo. *Landrum v. Goering*, 306 Kan. 867, 872-73, 397 P.3d 1181 (2017); see *State v. Smith*, 309 Kan. 977, 982, 441 P.3d 1041 (2019).

K.S.A. 2019 Supp. 21-6615 entitles a defendant to jail credit for "time which the defendant has spent incarcerated pending the disposition of the defendant's case." A defendant has a right to credit for time spent in custody while "being held solely on the charge for which the defendant is being sentenced." *Hooks v. State*, 51 Kan. App. 2d 527, 531, 349 P.3d 476 (2015).

The record on appeal supports Carlton's assertion that he spent 1,193 days incarcerated pending conviction. The district court sentenced Carlton on May 8, 2018, and the amended PSI said that Carlton qualified for 1,102 days of credit as of February 6, 2018. At sentencing, the parties agreed that as of the date of sentencing, Carlton was entitled to 1,193 days of credit, and the district court "tentatively" credited Carlton those days. But the district court's journal entry of judgment reflects only 235 days of credit and does not explain the discrepancy.

Still, we decline to order the district court to enter a nunc pro tunc. Carlton has a right to credit against his sentence only for time he spent in custody solely because of the charges in this case. We do not know whether Carlton was being held for 1,193 days solely on the charges for which he was sentenced. We thus remand for the district court's reconsideration of the number of days due Carlton as credit for time served. See *State v. Storer*, 53 Kan. App. 2d 1, 6, 382 P.3d 467 (2016).

*Did the District Court Err in Denying Carlton the Ability to Earn Good Time Credit?*

Carlton next contends that the district court erred in ordering no good time credit be applied to his sentence. The State again agrees that this issue would best be addressed on remand.

11

The district court apparently thought that because Carlton had been convicted of an off-grid offense, Carlton was not eligible to earn good time credit. But Carlton got a departure sentence, and that sentence makes him eligible to earn good time credit. Our Supreme Court so held in *State v. Ballard*, 289 Kan. 1000, 1014, 218 P.3d 432 (2009):

> "Ballard received a departure sentence from Jessica's Law: a determinate sentence pursuant to the guidelines of 55 months' imprisonment. Consequently, when Ballard completes his prison sentence, he will be placed on postrelease supervision, not parole. Stated another way, he will not serve an indeterminate sentence and then be subject to parole, as he would have been if sentenced to life imprisonment pursuant to 21-4643(a). Because the provisions of 22-3717(b)(5) simply do not apply to Ballard, they cannot serve as the basis for denying him eligibility for good time credit."

We are bound by this precedent. See *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). The district court thus erred in denying Carlton eligibility for good time credit.

As in *Ballard* and this court's decision in *State v. Dunn*, No. 119,866, 2019 WL 3210390, at *2-3, *6 (Kan. App. 2019) (unpublished opinion), *rev. granted* February 25, 2020, we remand for resentencing on this issue.

*Did the District Court Err in Ordering Lifetime Electronic Monitoring?*

Finally, Carlton contends that the district court erred by ordering lifetime electronic monitoring because he got an on-grid sentence. The State does not address this claim.

This issue involves statutory interpretation, which presents a question of law over which we have unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015

(2019). The most fundamental rule of statutory construction is that the intent of the Legislature governs if we can determine that intent. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). We first try to determine legislative intent through the statutory language enacted, giving common words their ordinary meanings. See *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). When a statute is plain and unambiguous, we do not speculate about the legislative intent behind that clear language, and we refrain from reading something into the statute that is not readily found in its words. 309 Kan. at 164.

The *Dunn* panel addressed this issue. The panel first recognized that the Kansas Prisoner Review Board is in charge of establishing parole conditions (citing *State v. Waggoner*, 297 Kan. 94, 100, 298 P.3d 333 [2013]). Yet the sentencing court is required by K.S.A. 2015 Supp. 21-6604(r) to order lifetime electronic monitoring as part of a defendant's sentence, in some cases. *Dunn*, 2019 WL 3210390, at *3. Because Carlton was convicted of aggravated indecent liberties with a child, see K.S.A. 2019 Supp. 21-6627(a)(1)(C), K.S.A. 2019 Supp. 21-6604(r) would have generally applied to Carlton's sentence.

But that rule is altered when, as here, a defendant is granted a departure to a determinate sentence under the KSGA:

"[T]he defendant's release is determined by the length of the controlling sentence imposed by the district court minus good time credit. See *State v. Gaudina*, 284 Kan. 354, 358, 160 P.3d 854 (2007) (noting that complete sentence under the KSGA includes 'the prison sentence, the maximum potential reduction to such sentence as a result of good time and the period of postrelease supervision'). *Dunn*, 2019 WL 3210390, at *4.

*Dunn* held that based on the relevant statutory provisions, the Legislature intended to limit lifetime electronic monitoring to parolees—not to those subject to postrelease supervision after serving a determinate sentence, like Carlton will be:

13

"[B]oth K.S.A. 2018 Supp. 21-6604(r) and K.S.A. 2018 Supp. 22-3717(u) refer to a sentence imposed under K.S.A. 2018 Supp. 21-6627. Subsection (a)(1) of that statute directs:

"'Except as provided in subsection (b) or (d), a defendant who is 18 years of age or older and is convicted of the following crimes committed on or after July 1, 2006, shall be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years unless the court determines that the defendant should be sentenced as determined in subsection (a)(2).'

"The listed crimes include [aggravated indecent liberties]. See K.S.A. 2018 Supp. 21-6627(a)(1)([C]). K.S.A. 2018 Supp. 21-6627 provides a few statutory exceptions for sentencing a criminal defendant to an indeterminate sentence of imprisonment for life without parole for 25 years. Most of the exceptions do not apply [here] and involve imposing a harsher indeterminate life sentence. See K.S.A. 2018 Supp. 21-6627(a)(2), (b)(1), and (b)(2). However, subsection (d) provides an exception authorizing the district court to depart from the presumptive indeterminate life sentence to the sentencing grid. While K.S.A. 2018 Supp. 21-6627(d) authorizes a departure from K.S.A. 2018 Supp. 21-6627(a), if the court finds substantial and compelling reasons to depart, the sentence imposed is no longer under the authority of K.S.A. 2018 Supp. 21-6627. Instead, if the court departs, the defendant is sentenced pursuant to the provisions of K.S.A. 2018 Supp. 21-6818 and 'no sentence of a mandatory minimum term of imprisonment shall be imposed hereunder.' K.S.A. 2018 Supp. 21-6627(d)(1). Turning to K.S.A. 2018 Supp. 21-6818, that statute provides:

"'(a) When a departure sentence is appropriate, the sentencing judge may depart from the sentencing guidelines as provided in this section. …
"'(b) When a sentencing judge departs in setting the duration of a presumptive term of imprisonment:
(1) The judge shall consider and apply the sentencing guidelines, to impose a sentence that is proportionate to the severity of the crime of conviction and the offender's criminal history; and

14

(2) the presumptive term of imprisonment set in such departure shall not total more than double the maximum duration of the presumptive imprisonment term.'

"Considering these provisions together, a sentence imposed under K.S.A. 2018 Supp. 21-6627 is an indeterminate life sentence with various parole eligibility, not a guidelines sentence imposed under K.S.A. 2018 Supp. 21-6818 under the authority of K.S.A. 2018 Supp. 21-6627(d). When the Kansas Legislature mandated the imposition of lifetime electronic monitoring under either K.S.A. 2018 Supp. 21-6604(r) or K.S.A. 2018 Supp. 22-3717(u) for sentences imposed under K.S.A. 2018 Supp. 21-6627, the Legislature reserved lifetime electronic monitoring to parolees, not persons subject to postrelease supervision after serving a determinate sentence." *Dunn*, 2019 WL 3210390, at *4.

We agree with the *Dunn* panel's analysis. Because Carlton is serving a determinate sentence, the district court erred in imposing lifetime electronic monitoring. We vacate that portion of Carlton's sentence.

*Conclusion*

We remand this case with directions for the district court to redetermine Carlton's criminal history and to reconsider Carlton's credit for time served. We reverse the district court's denial of Carlton's ability to earn good time credit and vacate its requirement of lifetime electronic monitoring.

Reversed in part, vacated in part, and remanded with directions.